CAP ROCK ELECTRIC COOPERATIVE,
INC., Appellant,

v.

TEXAS UTILITIES ELECTRIC
COMPANY, Appellee.

No. 08–93–00061–CV.

Court of Appeals of Texas,
El Paso.

Feb. 2, 1994.

Opinion Overruling Motion for
Rehearing April 7, 1994.

James P. Boldrick, Boldrick, Clifton, Nelson & Holland, Midland, for appellant.

Rick D. Davis, Jr., Charles Tighe, Cotton, Bledsoe, Tighe & Dawson, Midland, M.D. Sampels, Worsham, Forsythe, Sampels & Wooldridge, L.L.P., Dallas, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a final judgment in a declaratory judgment action granting summary judgment in favor of Appellee, Texas Utilities Electric Co., denying summary judgment for Appellant, Cap Rock Electric Cooperative, Inc., and imposing sanctions on Appellant. In ten points of error, Appellant attacks the entry of summary judgment, as well as the imposition of sanctions. We affirm the judgment of the trial court.

## I. SUMMARY OF THE PROCEEDINGS

Texas Utilities Electric Company, Appellee, is an electric utility company which provides electric service to a large portion of the State of Texas. Cap Rock Electric Coopera-

tive, Inc., Appellant, is a rural electric distribution cooperative which services customers in West Texas. Appellant owns no facilities for the generation of electric power and has long purchased all of its customers' power and energy requirements from TU Electric.

In 1990, TU Electric and Appellant negotiated and executed a new contract, the 1990 Power Supply Agreement (1990 PSA), for the purchase of power by Appellant from TU Electric. The 1990 PSA expressly provided that it would not become effective until Appellant terminated the prior contract governing such purchases. The enforceability of the 1990 PSA is the central issue in this case.

The dispute in the instant case centers around the quantity of power Appellant is required to purchase from TU Electric under the terms of their 1990 PSA. Appellant, believing that the 1990 PSA gave it the right, but not the obligation, to purchase all of its power requirements from TU Electric, advised TU Electric that it was terminating the prior agreement and would begin to purchase a significant percentage of its power from other providers. The termination of the prior agreement is not an issue in this appeal. TU Electric responded that, in its opinion, the 1990 PSA was a full-requirements contract and Appellant could not purchase power elsewhere without following the procedures detailed in that agreement.

Appellant subsequently filed an action seeking a declaration that the 1990 PSA is not a binding and enforceable contract, or in the alternative, that the contract is not a full-requirements contract. Appellant additionally sought injunctive relief preventing TU Electric from taking any action to interfere with or prevent Appellant from receiving electricity from any other source. TU Electric answered and filed a counterclaim seeking a declaration that the 1990 PSA is an enforceable full-requirements contract, and also seeking specific performance of that agreement. A hearing was held on Appellant's request for injunction, with the trial court denying the requested injunctive relief.

Subsequent to the injunction hearing, both parties filed motions for sanctions against the other for alleged misconduct during the hear-

ing. Both parties also filed motions for summary judgment on the contract interpretation issue and stipulated that all testimony, documents, exhibits, or other evidence admitted into evidence at the hearing on Appellant's application for injunction be before the trial court in support of or opposition to summary judgment as if such evidence were contained in an affidavit filed in accordance with TEX.R.CIV.P. 166a.

■ After yet another hearing, the trial court granted TU Electric's motion for summary judgment, ruling that the 1990 PSA is an unambiguous, fully enforceable, full-requirements contract and denied Appellant's motion for summary judgment. The trial court additionally imposed sanctions on Appellant for its misconduct during the injunction hearing and awarded attorney's fees to TU Electric. Finally, the trial court granted TU Electric's Motion for Severance, severing TU Electric's cause of action for specific performance of the 1990 PSA, and assigning that cause of action a separate docket number. The judgment signed by the trial court thus disposed of all issues and parties and, as such, is a final appealable judgment. *See Teer v. Duddlesten,* 664 S.W.2d 702, 703 (Tex.1984); *Jackson v. Coldspring Terrace Property Owners Ass'n,* 838 S.W.2d 320, 322 (Tex.App.—El Paso 1992, no writ).

## II. *DISCUSSION*

### A. Sanctions

In Point of Error No. Six, Appellant asserts that the trial court erred in assessing sanctions against it. Specifically, Appellant contends that there was legally or factually insufficient evidence to support the trial court's finding that it or its representatives intentionally mislead the court or acted in bad faith during an injunction hearing. Appellant further asserts that the sanctions are improper in that TU Electric was not harmed or prejudiced in any way by any such conduct by Appellant.

The trial court's extensive findings of fact and conclusions of law set forth the facts which formed the basis of the sanction order. Due to the seriousness of the violation and the innovative sanction which was imposed, a summary of these findings is set out as follows:

Cap Rock's board of directors approved a bonus ("success fee") for certain management employees on November 26, 1991. Two such success fee contracts, providing for a bonus to be paid to Steven Collier, were executed by Cap Rock on that same day. Mr. Collier executed the two contracts on December 10–11, 1991.

An injunction hearing in this cause was held on March 26–27 and April 14–15, 1992. On April 9, 1992, an attorney for TU Electric informally requested copies of all documents relating to Mr. Collier's compensation arrangements with Cap Rock. When informed of this request, Mr. Collier turned over to Cap Rock's attorneys a file containing, among other things, copies of his employment contract and two signed copies of the success fee contracts. The attorneys brought the file to Midland on April 13 before the injunction hearing resumed.

On April 13, Cap Rock and Collier decided to "rescind" the two success fee contracts, so that they would not have to be produced. Rescission contracts, back-dated to April 3, were then prepared by the attorneys and signed by Cap Rock and Collier. Also on April 13, the file containing Mr. Collier's employment contract and the signed success fee contracts was returned by the attorneys to a representative of Cap Rock. The file remained with the representative in Midland until at least the evening of April 14.

Although Mr. Collier did not give the "rescission" documents back to Cap Rock after they were signed, he orally indicated to the Cap Rock representative on the morning of April 14 that he did in fact agree to rescind the success fee contracts. He also agreed to testify that no such success fee contracts existed if he was asked at the hearing.

Just prior to the resumption of the hearing on the morning of April 14, Cap Rock's attorney produced for TU Electric a copy of Mr. Collier's employment contract and stated that this contract was the only document he was aware of that concerned Mr.

Collier's employment. The success fee contracts and rescission contracts were not produced.

During the hearing on April 14, Mr. Collier denied the existence of any success fee arrangement but testified that he hoped to have such an arrangement at some point. Mr. Collier further testified, when asked if he had recently negotiated a success fee arrangement with Cap Rock, that he and Cap Rock had "considered" written language about a success fee arrangement. Attorneys for TU Electric then renewed their request for such documents, including any documents "evidencing those discussions."

The trial court then asked Mr. Collier if he had any such documents. Collier responded that he had in his files in Austin "written language that I have proposed and what we have discussed about what an acceptable arrangement might be." An attorney for Cap Rock informed the court that he did not have any such documents with him (in Midland), but he could get them later that day. The court then instructed him to do so and produce them for the court.

An attorney for Cap Rock then left the courtroom and called his office in San Angelo. He requested his secretary to generate copies of the success fee contracts from his office's word processor and fax them to Cap Rock's office in Stanton. The attorney then called Cap Rock's office and instructed them to stamp the copies as "DRAFT" and re-fax them to the Midland office of another of Cap Rock's attorneys. The two signed originals of the success fee contracts were, at this time, in Cap Rock's office in Stanton. The two signed copies that the attorney had brought to Midland were still in the possession of the Cap Rock representative in Midland.

At the end of the injunction hearing on April 14, Cap Rock produced to the court the copies of the unsigned success fee contracts generated in San Angelo earlier that day and stamped "DRAFT." None of the signed copies or the "rescission" contracts were produced.

During the evening of April 14, Mr. Collier destroyed the two "rescission" contracts that had been signed the day before and back-dated to April 3. Later that evening, the attorneys for Cap Rock, Mr. Collier, and another individual met in a hotel room in Midland and discussed the existence of the signed success fee contracts and the approach Cap Rock had taken and would take in the future regarding their production to the trial court. This discussion was loud enough to be heard, without the aid of any listening device, by a representative of TU Electric, who occupied an adjacent room at the hotel. Cap Rock's attorneys knew that the TU Electric representative occupied that room.

The TU Electric representative took notes on what he heard and reported his findings to the attorneys for TU Electric. Before the injunction hearing resumed on the morning of April 15, TU Electric's attorneys advised the attorneys for Cap Rock that they knew of the existence of the signed success fee contracts and asked the attorneys for Cap Rock to make a full disclosure to the court of the circumstances surrounding their failure to produce such documents earlier as ordered.

At the hearing, the attorneys for Cap Rock produced the copies for the court and indicated that they had been faxed in that morning from Austin. The attorneys did not tell the court that they had manufactured the two "DRAFT" copies and produced those, rather than producing the signed copies of the documents that were readily available. The "rescission" contracts were still not produced. TU Electric's attorneys then asked for a hearing in chambers, where they advised the court of the conversation among Cap Rock's attorneys and representatives heard by the TU Electric representative in his hotel room the night before.

In chambers, an attorney for Cap Rock stated that the two signed success fee contracts "had not been approved by the [Cap Rock] board of directors." The contracts had been approved, however, in November of 1991. Mr. Collier also told the court that no written "rescission" document ex-

isted. He further stated that he told Cap Rock that he was willing to rescind the agreement, but that they decided that a written document was unnecessary.

The existence of the two signed success fee contracts was a material fact bearing on the credibility of Mr. Collier, Cap Rock's chief witness during the injunction hearing in this case.

■■■ The judge's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, by the same standards which are applied in reviewing the legal or factual sufficiency of the evidence to support jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). In considering a legal sufficiency or "no evidence" point, the court should consider only the evidence and inferences tending to support the trial court's finding and disregard all contrary evidence. In reviewing a factual insufficiency or "insufficient evidence" claim, the court should consider and weigh all the evidence in the case, and set aside the trial court's judgment if it is against the great weight and preponderance of the evidence. *Okon*, 612 S.W.2d at 941.

After carefully reviewing all of the evidence, we find that the evidence is both legally and factually sufficient to support the trial court's findings that Appellant or its representatives intentionally mislead the trial court and acted in bad faith. Accordingly, Appellant's Point of Error No. Six is overruled.

The trial court concluded that Appellant had violated the court's order for discovery of documents and its representatives and attorneys had knowingly and in bad faith participated in a scheme which was designed to mislead the court about the existence of the two signed success fee contracts. The scheme involved the creation of unsigned "DRAFT" copies of such contracts. The trial court also concluded that, in furtherance of that scheme, Mr. Collier gave intentionally misleading testimony and destroyed the two "rescission" contracts in direct contravention of the court's order to produce all documents regarding any success fee arrangement Mr. Collier had with Appellant.

Based on these findings of fact and conclusions of law, the trial court, pursuant to the provisions of Rule 215 of the Texas Rules of Civil Procedure, ordered Appellant to perform 200 hours of community service to directly benefit a non-profit community service program, charitable institution, or civic organization. The trial court ordered such service to be performed by officers or directors of Appellant and completed within twelve months of the date the judgment in this case becomes final.

■■■ A trial court may unquestionably impose sanctions on any party that abuses the discovery process. TEX.R.CIV.P. 215. The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). A trial court abuses its discretion if the sanction it imposes does not further one of the purposes that discovery sanctions were intended to further. *Id.*

Appellant complains that this sanction order fails to further the purposes of discovery sanctions, namely the remedy of prejudice, as set forth in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), or other applicable law. Specifically, Appellant argues that TU Electric was not prejudiced in any way, since the signed copies of the success fee contracts were produced to the trial court before the court made a decision on the injunction hearing.

In *TransAmerican*, the Supreme Court stated that:

> [W]hether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party.... Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no

more severe than necessary to satisfy its legitimate purposes.

*TransAmerican*, 811 S.W.2d at 917. Appellant asserts that this language implies that remedying prejudice is the only legitimate purpose of sanctions. We disagree.

■ It is well established that punishment and deterrence, as well as remedy of prejudice, are also legitimate purposes of sanction orders. *See TransAmerican*, 811 S.W.2d at 918; *Bodnow Corp.*, 721 S.W.2d at 840. The findings of fact by the trial court in this case, which find ample support in the evidence, indicate an alarming and deliberate scheme on the part of Appellant and its attorneys to hide material evidence from and mislead TU Electric and the trial court. Such trickery and deceit can not **and will not** be tolerated by the Courts of the State of Texas.[1] Sanctions imposed to punish and deter this abominable conduct are not only permissible, they are mandatory.

The trial court did not specify which part of Rule 215 it relied upon in imposing sanctions in this case. Although performance of community service is not among the possible sanctions enumerated in Rule 215 2 b, the rule generally authorizes a trial court to sanction discovery abuse by "such orders . . . as are just."[2]

In *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991), the Supreme Court discussed the propriety of a community service sanction for an abuse of the discovery process. The Court stated, "We recognize that discovery abuse is widespread and we have given trial courts broad authority to curb such abuse." *Braden*, 811 S.W.2d at 930. The Court fur-

ther stated that, "[W]e do not criticize this type of creative sanction. . . ." *Id.*

■ While the Supreme Court did not directly authorize such sanctions under Rule 215 2 b, we agree with the Court's implicit approval of this type of innovative sanction order by trial courts. *See also Braden v. South Main Bank*, 837 S.W.2d 733, 742 (Tex. App.—Houston [14th Dist.] 1992), *cert. denied*, ─ U.S. ─, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993). Accordingly, we hold that the trial court did not abuse its discretion in ordering Appellant to perform 200 hours of community service as a sanction for its violation of the trial court's order for discovery of documents. Appellant's Point of Error No. Seven is overruled.

### B. The Contract

■ In Points of Error Nos. One through Five, Appellant asserts that the trial court erred in denying its motion for summary judgment and granting TU Electric's motion for summary judgment. Generally, an order denying a summary judgment is not appealable, yet an exception is recognized when both parties file motions for summary judgment, and the court grants one of the motions and overrules the other. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). In such a case, this Court may determine all questions presented, reviewing all the summary judgment evidence, since we are to render judgment for the party whose motion should have been granted. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984); *Edinburg Consol. In-*

---

1. The record shows, and Appellees specifically assert, that any reference to Appellant's attorneys or counsel with respect to any alleged intentional wrongdoing, is intended to refer only to the Hons. Richard C. Balough and Tom W. Gregg, Jr. Appellees have specifically excluded the Hons. J. Brian Martin, Mark J. Yudof, James P. Boldrick and Dick R. Holland from the commission of any misdeeds.

In light of the seriousness of the trial court's factual findings, i.e., the deliberate misleading of the trial court and counsel as to the existence of contracts, as well as the making, authenticating, and passing of unsigned "DRAFT" contracts as originals, when in fact signed originals had been executed, the Clerk of this Court is hereby direct-

ed to forward a copy of this opinion to the State Bar of Texas for review of the trial court's findings of fact and conclusions of law, and for appropriate disciplinary action, if deemed necessary. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 3.03 (1989) and TEX.PENAL CODE § 32.21 (Vernon 1989).

2. TEX.R.CIV.P. 215 2 b. states, in pertinent part as follows:

If a party or an officer, director, or managing agent of a party . . . **fails . . . to obey an order to provide or permit discovery**, . . . the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just. . . . **[Emphasis added]**.

*dep. School Dist. v. St. Paul Ins. Co.,* 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, writ denied).

We note at the outset that both parties agree that the 1990 PSA is unambiguous. Their dispute arises out of the meaning to be attributed to certain terms contained in the contract and the effect of omitting certain terms from that contract. It is well established that the question of whether a contract is ambiguous is a question of law for the trial court's determination, after examining the contract as a whole in light of the circumstances existing at the time the contract was signed. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824 (Tex.App.—El Paso 1993, n.w.h.). A contract is ambiguous if, after applying the rules of construction, its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker,* 650 S.W.2d at 393; *Jaeger,* 867 S.W.2d at 829. Once the trial court determines that the contract is unambiguous, the construction of that contract is likewise a question of law. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968); *First City Nat'l Bank v. Concord Oil Co.,* 808 S.W.2d 133, 137 (Tex.App.—El Paso 1991, no writ).

Legal conclusions of a trial court are always reviewable on appeal. Trial court findings on the law are given no particular deference. Rather, as the final arbiter of the law, the appellate court has the power and the duty to independently evaluate the legal determinations of the trial court. *Sears, Roebuck and Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied).

Appellant's argument centers on its contention that the 1990 PSA contains no terms as to quantity nor as to points of delivery, thus rendering the contract too indefinite to be enforced. If these essential terms of the contract were indeed missing from the contract, this contention would be correct. *See, e.g., University Nat'l Bank v. Ernst & Whin-*

*ney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ); *Mooney v. Ingram,* 547 S.W.2d 314, 317 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

To support its assertion that these essential terms were omitted from the contract, Appellant points to Exhibits A and B of the 1990 PSA. Exhibit A purports to specify the "contract demand" at each of Appellant's "points of delivery." This form is blank, however, containing only the phrase, "Information to be Specified on the Effective Date of this Agreement." Exhibit B purports to specify the name, location, and other pertinent information regarding Appellant's "power supply resources." This form is likewise blank, stating, "To be specified pursuant to Section 2.03 of this Agreement."

It is Appellant's contention that the completion of these exhibits was a condition precedent to the formation of the contract, and by leaving them blank, Appellant refused to exercise its option to take power from TU Electric. We disagree. "Contract demand," "points of delivery," and "power supply resources" are defined in the 1990 PSA as follows:

1.01 "Contract Demand" shall mean the maximum amount of power and energy expressed in kilowatts (Contract kW) that Cap Rock projects TU Electric will be required to provide at each Point of Delivery. Contract Demand will be specified on Exhibit A, which may be changed from time to time as provided in Section 3.08 hereof.

1.11 "Points of Delivery" shall mean all points within TU Electric's Control Area at which TU Electric maintains an electrical connection with Cap Rock existing on the effective date hereof, each of which Points of Delivery shall be specified on Exhibit A hereto, which shall be amended from time to time in accordance with Section 3.07(b) hereof.

1.13 "Power Supply Resources" shall mean Cap Rock's Firm Power Resources and/or economy energy resources specified from time to time on Exhibit B hereto pursuant to the provisions of this Agreement.

[Emphasis added]. Further, "firm power resource" is defined as "a Power Supply Resource.... other than TU Electric...."

When the 1990 PSA is read as a whole, it is clear that the completion of Exhibits A and B was not a condition precedent to formation of the contract. The "points of delivery" to be specified on Exhibit A were not, as Appellant contends, discretionary with Appellant. As the definition above indicates, all points meeting the definition on the effective date of the agreement shall be specified on Exhibit A. Thus, Appellant had no option to pick and choose which points of delivery to list. It is well-recognized in Texas that when an agreement provides a standard to be applied in determining an element of the contract, the contract is sufficiently definite to be enforceable. *See Penwell v. Barrett*, 724 S.W.2d 902, 905 (Tex.App.—San Antonio 1987, no writ). The standard to be applied in this case is all points:

 (1) within TU Electric's control area;

 (2) at which TU Electric maintains an electrical connection with Cap Rock; and

 (3) existing on the effective date of the agreement.

Thus, all such points were known as of the effective date of the 1990 PSA and their omission is not fatal to the formation and enforceability of the contract.

Similarly, the listing of "power supply resources" on Exhibit B was not a condition precedent to the formation of the contract. The 1990 PSA does not require Appellant to utilize power supply resources other than TU Electric. The contract merely gives Appellant the option to do so after following the notice requirements of the agreement.

Finally, "contract demand," as defined in the contract, is not a quantity term as Appellant contends. When the contract is read as a whole and in light of the surrounding circumstances, *see Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981); *City of Pinehurst*, 432 S.W.2d at 518–19, it is clear that contract demand is merely a planning tool for TU Electric, allowing TU Electric to more accurately forecast the future demand for its power and equip its generating facilities accordingly. The contract demand is also used in the billing process.[3]

The quantity of power to be purchased by Appellant under the 1990 PSA is found in Section 3.01 of the agreement. This section reads in pertinent part as follows:

3.01 Full Requirements Power and Energy

 Except as otherwise permitted by this Agreement, Cap Rock shall purchase from TU Electric and TU Electric will sell to Cap Rock **all** of Cap Rock's power and energy requirements, including normal load growth, at each of the Points of Delivery for resale to Cap Rock's customers....

[Emphasis added]. The "except as otherwise permitted by this Agreement" language refers to the provisions in the contract that allow Appellant to reduce the load supplied by TU Electric after proper notice is given. Thus, when the contract is read as a whole, the quantity of power to be supplied by TU Electric is all of Appellant's requirements unless and until such notice of reduction is given by Appellant.

We thus agree with the trial court that when the 1990 PSA is read as a whole and in light of the surrounding circumstances, the contract is an unambiguous and fully enforceable full-requirements contract unless and until Appellant gives the requisite notice to TU Electric. As such, we hold that the trial court did not err in granting TU Electric's motion for summary judgment and denying

---

**3.** Section 3.05 Rate Schedule

It is distinctly understood and agreed that the monthly rate of charge (including any charges for power and energy in excess of Contract demand and any demand determinations affecting billing demand) for all power and energy which Cap Rock shall purchase from TU Electric and TU Electric is required to sell to Cap Rock under this Agreement shall be pursuant to TU Electric's Rate WP Wholesale Power, or its successor, as the same may from time to time be fixed and approved by the PUCT.

The "Rate WP" referenced in this section is TU Electric's rate schedule, which is approved by the Public Utility Commission of Texas (PUCT). Under this rate schedule, the quantity of power and energy to be sold and charged for is not the contract demand (or contract kW) specified in the applicable contract.

Appellant's motion for summary judgment. Accordingly, Appellant's Points of Error Nos. One through Five are overruled.

### C. Attorney's Fees

In Points of Error Nos. Eight, Nine, and Ten, Appellant asserts that the trial court erred and abused its discretion in awarding attorney's fees to TU Electric because such attorney's fees were not timely requested and were clearly excessive. The trial court awarded TU Electric $75,000 for the fees incurred through the presentation of the motion for summary judgment, $10,000 for the fees incurred in the presentation of the motion for sanctions, $50,000 as fees in the event of an appeal to this Court, $25,000 as fees in the event there is an application for writ of error to the Supreme Court of Texas, and $15,000 as fees if such writ is granted. In addition, Appellant asserts that TU Electric is not entitled to attorney's fees under TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.009 and 38.001 (Vernon 1986) or TEX.R.CIV.P. 215 2 b(8).

■ The amount of an award of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of abuse of discretion. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.,* 821 S.W.2d 283, 288 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Reintsma v. Greater Austin Apartment Maintenance,* 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1978, writ dism'd). The hearing on the parties' motions for summary judgment was held on July 24, 1992. Appellant contends that TU Electric's failure to present proof of attorney's fees as the hearing on the motion for summary judgment waives any claim for attorney's fees. In light of the summary judgment evidence before the trial court and likewise before this Court for review, we disagree.

■ Appellant relies on the case of *Thompson v. A.G. Nash & Co., Inc.,* 704 S.W.2d 822, 824 (Tex.App.—Tyler 1985, no writ) to support this proposition. The Tyler Court of Appeals in the *Thompson* case, however, affirmed the trial court's refusal to award attorney's fees in a summary judgment because the requesting party did not provide any expert testimony "in the form of summary judgment evidence **or otherwise**" to support an award of attorney's fees. *Thompson,* 704 S.W.2d at 824. In the instant case, TU Electric filed its Motion for Award of Attorneys' Fees on August 14, 1992, after the summary judgment hearing but before the summary judgment was granted. TU Electric attached to the motion the affidavits from one of its attorneys in support of the motion. Thus, TU Electric did present evidence of attorney's fees to the trial court before the summary judgment was granted and did not waive its claim for attorney's fees.

■ Appellant next asserts that the attorney's fees in this case are not a proper matter for summary judgment in that the affidavits of TU Electric in support of its motion are conclusory and inadequate to prove the necessity and reasonableness of the attorney's fees as a matter of law. However, the trial court may take judicial knowledge of the usual and customary attorney's fees for the legal services provided by the movant's attorneys, even though no request was made for the trial court to do so and the trial court did not formally announce that it had done so. TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986); *Ho v. Wolfe,* 688 S.W.2d 693, 697 (Tex.App.—Amarillo 1985, no writ); *Holsworth v. Czeschin,* 632 S.W.2d 643, 645 (Tex.App.—Corpus Christi 1982, no writ). Further, the appellate court may presume that the trial court, in support of its judgment, did take such judicial notice. *Holsworth,* 632 S.W.2d at 645.

■ The affidavit of TU Electric's attorney established a prima facia case for a recovery of the stated amount of attorney's fees, and in the absence of controverting evidence, the affidavit will support the court's award of attorney's fees in the summary judgment. *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.,* 754 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Appellant, in its objection to TU Electric's motion for attorney's fees, wholly neglected to file any affidavits from its attorneys contesting the reasonableness or necessity of TU Electric's attorney's fee affidavits.

Thus, no fact issue was created. *See Owen Elec. Supply, Inc.*, 821 S.W.2d at 288; *Tesoro Petroleum Corp.*, 754 S.W.2d at 767. Accordingly, we hold that there was no issue of material fact in this case regarding the attorney's fees and, presuming that the trial court took judicial notice of the usual and customary fees for the types of legal services provided by TU Electric's attorneys, that such attorney's fees were not excessive.

 Appellant next asserts that TU Electric is not entitled to attorney's fees under Tex.Civ.Prac. & Rem.Code Ann. § 37.-009. Chapter 37 of this code sets forth the remedies available in an action for declaratory judgment. Section 37.009 reads:

In any proceeding under this chapter, the court **may** award costs and reasonable attorney's fees as are equitable and just.

Tex.Civ.Prac. & Rem.Code Ann. § 37.009. [Emphasis added]. Thus, the award of attorney's fees under this section is discretionary with the trial court, and an award will be set aside only on a showing of abuse of discretion. *Inn of the Hills, Ltd. v. Schulgen & Kaiser*, 723 S.W.2d 299, 302 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). The fact that Appellant may have initially brought this cause pursuant to a good faith controversy over the enforceability of the 1990 PSA does not preclude the trial court from properly exercising its discretion by awarding attorney's fees to TU Electric.

 Since the trial court did not specify which statute it relied upon in awarding the attorney's fees to TU Electric and we have concluded that the award of $75,000 was authorized by § 37.009, we need not address whether the attorney's fees were permissible under Tex.Civ.Prac. & Rem.Code Ann. § 38.-001. Likewise, once a right to attorney's fees is established, the award may include attorney's fees for any appeal. *Gunter v. Bailey*, 808 S.W.2d 163, 165 (Tex.App.—El Paso 1991, no writ). Thus, we find the award of appellate attorney's fees to be proper.

Finally, Appellant contends that TU Electric is not entitled to attorney's fees pursuant to Tex.R.Civ.P. 215 2 b(8). This subsection reads:

In lieu of any of the foregoing orders or in addition thereto, the court **shall** require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.

Tex.R.Civ.P. 215 2 b(8). [Emphasis added]. Appellant's contentions again center on the argument that TU Electric was not harmed or prejudiced in any way by the conduct of Appellant's employees and attorneys and incurred no expense with respect for the matter. The record clearly shows, however, that the trial court conducted a hearing on the sanctions issue, causing TU Electric to spend some amount of time in preparation for the hearing.

Having determined that the trial court was authorized by the Texas Civil Practice and Remedies Code and the Texas Rules of Civil Procedure to award attorney's fees in this case, we find that the trial court did not err nor otherwise abuse its discretion in awarding such attorney's fees. Accordingly, Appellant's Points of Error Nos. Eight, Nine, and Ten are overruled.

Having overruled each of Appellant's Points of Error, the judgment of the trial court is hereby affirmed.

## OPINION ON REHEARING

Appellant's motion for rehearing is overruled in its entirety.

On motion for rehearing, counsel for Richard Balough requests that the Court modify footnote one of the foregoing opinion.[1] Footnote one refers to attorneys Balough and Gregg in connection with the underlying trial court sanctions proceedings. The footnote further directs the Clerk of this Court to

1. We note that Richard C. Balough is not a party to this appeal. Further, although he served as counsel for Appellant Cap Rock Electric Cooper- ative, Inc., he was granted the right to withdraw as counsel on October 20, 1993.

forward a copy of the opinion to the State Bar of Texas for appropriate disciplinary action, if deemed necessary. Specifically, Balough requests that the footnote be modified to delete any reference to the attorneys insofar as disciplinary proceedings pertaining to the matter had taken place prior to the issuance of the Court's opinion, and the matter terminated in final resolution. We decline the request.

 While we note that the confidentiality provisions of the Texas Rules of Disciplinary Procedure preclude the State Bar of Texas and the attorneys and parties involved in the proceedings from disclosing publicly information concerning those proceedings, we specifically note that this Court does not concern itself with the ultimate administrative disposition of the matter. Rather, we note that Canon 3 D(1) of Texas Code of Judicial Conduct, effective January 1, 1994, requires a judge who receives information clearly establishing that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct to take appropriate action. We conclude that previous directive to forward a copy of the opinion in the instant case to the State Bar of Texas for disciplinary action, while unprecedented, is nonetheless appropriate, given the actions of the attorneys in question. Moreover, the deterrent effect on current and future members of the bar is not lost in having ordered the action previously taken.