**INVESTIN.COM CORP. and Laurence D. Briggs, Appellants,**

**v.**

**EUROPA INTERNATIONAL, LTD., Europa Securities, L.L.C. and Jeffrey R. Stewart, Appellees.**

No. 05–07–00797–CV.

Court of Appeals of Texas, Dallas.

July 28, 2009.

Laurence Briggs, Dallas, pro se.

Richard B. Schiro, Law Office of Richard B. Schiro, Greg Butts, Dallas, for appellees.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice RICHTER.

This case involves a joint and several judgment against a corporation and its president for breach of a settlement agreement. The trial court granted a traditional and no-evidence summary judgment in favor of Europa International, Ltd. ("EIL"), Europa Securities, L.L.C. ("ESL") and Jeffrey Stewart ("Stewart") (collectively, the "Europa Parties") against InvestIN.com Corporation (the "Corporation") and its president Laurence Briggs ("Briggs") and signed a final judgment awarding damages, attorney's fees, and interest jointly and severally against Briggs and the Corporation. In nine issues with multiple subparts, Briggs and the Corporation assert three general categories of error on appeal. Specifically, appellants contend the trial court erred because (1) Briggs is not individually liable under the settlement agreement; (2) the amount of

interest due under the settlement agreement was not correctly calculated because the settlement agreement requires that payments be credited to the interest-bearing obligations before the non-interest-bearing obligations; and (3) the amount of attorney's fees is excessive and must be reassessed in light of the reduced judgment. Because there is no basis for holding Briggs liable for the Corporation's failure to make payments under the settlement agreement, we conclude the trial court erred in awarding judgment jointly and severally against Briggs and the Corporation. We further conclude the settlement agreement does not specify the order of payments and the attorney's fees award is not excessive. We reverse the judgment against Briggs individually and affirm the judgment against the Corporation.

## BACKGROUND

### The Underlying Transactions

Briggs is the president of the Corporation. Stewart is the Chairman of EIL and a managing member of ESL. In 1998, the Corporation planned to offer its stock in an initial public offering ("IPO") and entered into several transactions to facilitate this process. The first transaction occurred in February 1998, when EIL loaned the Corporation $250,000 for working capital, development and equipment costs (the "EIL Loan Agreement"). Interest was to accrue on the loan at the rate of 10% per annum, due at the time of repayment of the loan. The loan was to be repaid either when the Corporation went public in an IPO or on the first anniversary date of the loan instrument, whichever occurred first. Briggs was not a party to the EIL Loan Agreement.

In March 1998, EIL and the Corporation entered into a contract for EIL to serve as an investment banker and agent for all of the Corporation's financing needs (the "Investment Banking Contract"). The Investment Banking Contract provided that EIL would be paid $10,000 as an initial expense retainer plus success fees for 10% of the principal amount of any financing it was able to arrange. Briggs was not a party to the Investment Banking Contract.

In May 1998, Stewart loaned the Corporation $50,000 (the "Stewart Loan"). Interest was to accrue on the loan at the rate of 10% per annum, due at the time the loan was repaid. The Stewart Loan was to be repaid at the earlier of either the IPO or the one year anniversary date of the loan agreement. Briggs was not a party to the Stewart Loan.

In June 1998, Stewart, ESL, and the Corporation entered into an agreement for Stewart to sell his interest in ESL in consideration for 100,000 shares of common stock in the Corporation (the "Stock Purchase Agreement"). In connection with the Stock Purchase Agreement, Stewart entered into an employment contract with the Corporation (the "Employment Contract"). Pursuant to the Employment Contract, Stewart purchased 25,000 shares of stock in the Corporation for $62,500. When the Corporation subsequently failed to deliver the stock certificates, Stewart resigned his employment. Briggs was not a party to the Stock Purchase Agreement or the Employment Contract.

### Default

The IPO never occurred and the Corporation did not timely pay the balance due under the EIL Loan Agreement or the Stewart Loan Agreement. Although EIL arranged $185,000 in financing for the Corporation and earned an $18,500 success fee, the Corporation did not pay EIL the expense fee or the success fee owed under the Investment Banking Contract. After

EIL made written demand on the Corporation, the Corporation made a $25,000 payment on the EIL Loan Agreement.

### The Lawsuit (Phase I)

Although the record does not include all of the parties' initial pleadings, affidavits and the pleadings that are available in the record reflect that EIL filed a lawsuit against the Corporation on August 16, 1999, and in subsequent filings, named Briggs individually as a party. Briggs and the Corporation answered, but Briggs did not assert that he was not liable in his individual capacity. The Corporation counterclaimed, and Stewart and ESL were named as third party defendants. ESL and Stewart counterclaimed against Briggs and the Corporation. Briggs and the Corporation answered the counterclaim, but Briggs did not raise a capacity defense. This initial phase of litigation continued until October 2000.

On October 26, 2000, the parties entered a settlement agreement (the "Settlement Agreement"). In essence, the Settlement Agreement required the Corporation to satisfy its obligations under the EIL Loan Agreement and the Stewart Loan Agreement, and to repurchase Stewart's stock in the Corporation. To this end, the Corporation was to make $25,000 monthly payments until the amounts due were paid in full. All parties provided mutual releases of the claims asserted in the lawsuit as well as other disputes that might arise in the future. The Settlement Agreement was signed by Briggs individually and on behalf of the Corporation, and by Stewart individually and on behalf of ESL and EIL.

The lawsuit was abated on November 27, 2000. Pursuant to the court's abatement order and the terms of the Settlement Agreement, the lawsuit was abated until the first to occur of (i) the parties informing the court that the terms of the Settlement Agreement had been successfully completed and filing a motion to dismiss; or (ii) one of the parties presenting evidence to the court that an opposing party had breached the terms of the Settlement Agreement.

The Corporation made fifteen payments under the Settlement Agreement totaling $227,350 and then ceased making payments. Following a motion by the Europa Parties, on June 16, 2005, the trial judge signed an agreed order that lifted the abatement and reinstated the case.

### The Lawsuit (Phase II)

On January 23, 2006, the Europa Parties filed a third amended petition against Briggs and the Corporation seeking judgment against Briggs and the Corporation jointly and severally. On February 10, 2006, Briggs and the Corporation filed a supplemental answer and asserted Briggs was not liable in the capacity in which he had been sued. The supplemental answer was not verified.

The Europa Parties subsequently filed a third amended traditional motion for summary judgment and an amended no-evidence motion for summary judgment. The no-evidence motion for summary judgment challenged the defenses and affirmative defenses asserted by Briggs and the Corporation and argued there was no evidence of modification, estoppel, ratification, estoppel, laches and waiver, nor was there any evidence the written instruments were ambiguous or unconscionable. The amended traditional motion for summary judgment asserted Briggs and the Corporation were liable under the Settlement Agreement. The motion further asserted that by failing to file a verified denial, Briggs and the Corporation had waived certain defenses, including Briggs's defense that he was not liable in the capacity in which he had been sued.

Briggs and the Corporation responded to both of the Europa Parties' motions, and included within the responses an "affirmative proof partial motion for summary judgment" and a no-evidence partial motion for summary judgment. The affirmative proof or traditional motion asserted Briggs was not individually liable under the Settlement Agreement. Briggs and the Corporation also argued that the Corporation's payments under the Settlement Agreement reduced the interest-bearing obligations before the non-interest bearing obligation and therefore the outstanding balance under the settlement agreement was not correctly calculated. Briggs's affidavit was included in the evidence filed with the traditional motion for summary judgment. In the affidavit, Briggs affirms that he is not liable in the capacity in which he has been sued, and states that he never agreed to assume personal liability for the Corporation's obligations under the Settlement Agreement. The no-evidence motion for summary judgment also asserted that there was no evidence that Briggs was personally liable for the payment obligations under the Settlement Agreement. The Europa Parties responded and argued that the plain language of the Settlement Agreement signed by Briggs in his individual capacity established Briggs's individual liability.

Following a hearing, on December 29, 2006, the trial court signed orders: (1) granting the Europa Parties' third amended motion for summary judgment; (2) granting the Europa Parties' no-evidence motion for summary judgment; (3) granting the Europa Parties' objection and motion to strike defendants' summary judgment evidence and striking exhibit E to defendants' summary judgment response; (4) denying Briggs and the Corporation's no-evidence partial motion for summary judgment on Briggs's lack of liability on the settlement agreement; and (5) denying

Briggs and the Corporation's affirmative proof partial motion for summary judgment. Briggs and the Corporation filed a motion for new trial, which appears to have been overruled by operation of law. *See* Tex.R. Civ. P. 329b(c). The trial court signed a final judgment on March 29, 2007. The judgment provides that the Europa Parties shall have judgment against Briggs and the Corporation jointly and severally for actual damages in the amount of $325,348.57, reasonable and necessary attorney's fees and expenses in the amount of $82,544.51, pre-judgment interest in the amount of $8,205.80, and post-judgment interest on the actual damages and attorney's fees accruing at a rate of 8.25% per annum from the date of the judgment until paid. This appeal followed.

## DISCUSSION

### *Standard of Review*

The standard for reviewing a traditional motion for summary judgment is well-established. *See Sysco Food Servs. v. Trappnell*, 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443,

446 (Tex.1982). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 567 (Tex. 1989).

A no-evidence summary judgment under Tex.R.Civ.P. 166a(i) is essentially a pretrial directed verdict, and a reviewing court applies the same legal sufficiency standard. *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.-El Paso 2000, no pet.). The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. *See* Tex.R.Civ.P. 166a(i). The nonmovant must produce evidence raising a fact issue on the challenged elements. *Id.* When reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Where, as here, the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr*, 776 S.W.2d at 569.

### Briggs's Individual Liability

In issues 1, 2, 3, and 4(a)-(c), Briggs and the Corporation assert the trial court erred in awarding a joint and several judgment because Briggs is not personally liable under the Settlement Agreement. The Europa Parties contend that Briggs's failure to verify his defensive plea precludes our consideration of the issue on appeal. Therefore, before we reach the merits, we must first examine whether the issue has been preserved for our review.

 Briggs first asserted that he was not liable in the capacity in which he had been sued in his post-abatement supplemental answer, but the answer was not verified. When capacity is contested, Rule 93 requires that a verified plea be filed "unless the truth of [such matters] appears of record." Tex.R. Civ. P. 93(2); *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex.2003). Although the supplemental answer was not verified, the Settlement Agreement, upon which summary judgment against Briggs was based, is also included in the summary judgment record. As discussed below, the unambiguous language of the Settlement Agreement reflects that Briggs did not assume personal liability for the payment obligations of the Corporation. Therefore, the matter of Briggs's capacity appears of record in the summary judgment evidence, and verification of the supplemental answer is not requisite to our consideration of the capacity defense on appeal. *See Cantu v. Holiday Inns, Inc.*, 910 S.W.2d 113, 116–117 (Tex.App.-Corpus Christi 1995, writ denied) (holding verification not necessary because defect of parties appeared of record in the summary judgment evidence).

 Having concluded that the matter of Briggs's capacity appears of record, we next consider whether the trial court erred in awarding judgment against Briggs and the Corporation jointly and severally.

Briggs contends the judgment was in error because the unambiguous language of the settlement agreement reflects that he did not assume personal liability for the payment obligations of the Corporation. The Europa Parties also argue that the Settlement Agreement is unambiguous, but claim the agreement evidences Briggs's assent to share the Corporation's responsibility for payments. We agree that the Settlement Agreement is not ambiguous, and will therefore construe it as a matter of law. *See Jacobson v. DP Partners Ltd. Partnership*, 245 S.W.3d 102, 106 (Tex. App.-Dallas 2008, no pet.).

When construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex.2005) (per curiam); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex.App.-Dallas 2006, pet. denied). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 55–56; *Biko v. Siemens Corp.*, 246 S.W.3d 148, 165 (Tex.App.-Dallas 2007, pet. denied).

In this case, the performance at issue is payment. Therefore, we examine the agreement to determine whether one or both parties promised this performance. The payment obligation is described in paragraph C(1) which provides:

### Payments to be made by [the Corporation]

In consideration of the agreements, representations and releases the parties have made or granted in this Settlement Agreement, and in full settlement of all claims and counterclaims that the parties have asserted, or that they could have asserted, against each other, [the Corporation] has agreed to make the following payments to [the Europa Parties] . . .

a. With respect to the EIL Loan Agreement, [the Corporation] will pay EIL $250,000 in principal . . .

b. With respect to the Stewart Loan Agreement, [the Corporation] will pay Stewart . . .

c. [the Corporation] will pay Stewart the total sum. . . .

(Emphasis added). Paragraph C(2) describes the method and timing of payments, and states in pertinent part:

### Method and Timing of [the Corporation's] Payments

[The Corporation] shall make all of the payments referred to in paragraph C(1) as follows:

a. [The Corporation] shall pay the amounts agreed to in paragraph C(1) above in monthly installments . . . [The Corporation] shall continue to make these payments . . . [The Corporation] shall make the first $25,000 payment by . . . [The Corporation] shall make all subsequent payments by wire transfer. . . .

(Emphasis added). Paragraph C(2)(b) recites that the Corporation anticipates raising capital through a private placement sale and states that if the sale raises at least $5,000,000, then "[the Corporation] shall pay [the Europa Parties] the total amount remaining due at that time under paragraph C(1)." If less than $5,000,000 but more than $2,000,000 is raised, then "[the Corporation] shall pay a percentage of the amounts due under paragraph C(1)." If less than $2,000,000 in capital is raised in the private placement, the agreement provides that "[the Corporation] shall thereafter increase the amount it is paying in monthly installments. . . ."

The Corporation's promise to make payments is also referenced in paragraph C(5), which describes the agreement to seek abatement of the lawsuit and specifies what will occur if the lawsuit is still pending when the Corporation makes the final payment. In this regard, paragraph C(5) states:

> [I]f the lawsuit is still pending at the time [the Corporation] makes the final payment due under paragraph C(1) then, within fourteen (14) days after [the Corporation] makes the final payment, the parties will present the Court with an Agreed Order of Dismissal. . . .

Despite the fact that every description of the payment obligation refers only to the Corporation, the Europa Parties insist that Briggs promised the payments as consideration for his release. To this end, the Europa Parties rely on the portion of paragraph C(1) which states "in consideration of the agreements, representations and releases the parties have made or granted in the settlement agreement, and in full settlement of all claims and counterclaims that the parties have asserted . . . ." and a similar recitation of consideration in paragraph D(1) which states "[f]or and in consideration of the payments set forth above and the release set forth in this Settlement Agreement, the Europa Parties hereby release and forever discharge [the Corporation] and Briggs." The Europa Parties proposed interpretation of paragraph C(1) ignores the plain language in the remainder of the paragraph—language that consistently and repeatedly identifies the Corporation as the sole party responsible for the payments. In addition, neither paragraph describes the consideration solely in terms of payments; instead consideration is described as including both the payments and releases, and in paragraph C(1), also the representations. We therefore reject the strained construction the Europa Parties seek to advance.

■ The Europa Parties also rely on select language in paragraph C(6) of the Settlement Agreement to support their argument concerning Briggs's liability. The Europa Parties reason that the reference to the payment paragraph in the phrase "[the Corporation] and Briggs shall not be considered to have failed to comply with any provision of paragraph C(1)" means that Briggs is also responsible for payments. When we construe a contract, however, no single provision is given controlling effect. *See Seagull Energy E & P Inc. v. Eland Energy Inc.,* 207 S.W.3d 342, 345 (Tex.2006). Instead, we consider all provisions of the contract with reference to the entire agreement. *Id.* Significantly, the remainder of the paragraph specifies that the Corporation is the party responsible for payment and against whom the Europa Parties may seek relief in the event the promised performance does not occur. In its entirety, paragraph C(6) states:

> [The Corporation] and Briggs shall not be considered to have failed to comply with any provision of paragraph C(1) of this Agreement unless [the Corporation] fails to pay [the Europa Parties] the sums they are entitled to . . . within five (5) days after [the Corporation] receives written notice . . . In the event that [the Corporation] does receive written notice . . . but fails to make the payment . . . the [the Europa Parties] may seek all relief against [the Corporation] authorized under Texas law.

■ In the contract field, if the acts of others (whether wrongful or not) are contributing factors to the plaintiff's injury, those others are not joined with the defendant as having committed the breach of contract. *See CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership,* 164 S.W.3d 675, 684 (Tex.App.-Austin 2005, no pet.). There-

fore, reading paragraph C(6) as a whole, we conclude that the reference to Briggs's compliance with the payment paragraph is not indicative of his having assumed the payment obligation.

The Europa Parties also argue that Briggs is individually liable because he is an officer of the Corporation and the Corporation is defined as including "... all of its directors, officers, shareholders, employees, representatives, agents, attorneys of record in the Lawsuit, affiliates, successors and assigns, subsidiaries and affiliated companies and all other persons acting for or on its behalf." We are not persuaded by this argument.

Applying this proposed construction to its logical extension would result in the assumption of responsibility for payment not just by Briggs, but also by the directors, shareholders, attorneys, employees and agents of the Corporation. Because the other corporate parties to the Settlement Agreement are similarly defined, the directors, officers, shareholders, attorneys, employees and agents of EIL and ESL, including Stewart, would also be responsible for the performances promised by ESL and EIL. Analyzing these definitions in conjunction with the Settlement Agreement as a whole, we conclude the parties did not intend such an absurd result. *See, e.g., Illinois Tool Works, Inc. v. Harris,* 194 S.W.3d 529, 533 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (courts do not construe contracts to produce absurd results).

In addition, the summary judgment evidence establishes that Briggs was not a party to the EIL Loan Agreement, the Stewart Loan, the Stock Purchase Agreement, or the Investment Banking Contract. Although the transactions underlying the settlement agreement are not determinative, the fact that Briggs was not a party to or responsible for the

obligations that were settled, coupled with the absence of specific language in the Settlement Agreement to indicate Briggs's assumption of personal liability, supports our conclusion that the parties did not intend that Briggs assume liability for the Corporation's debt.

■ Because every reference to the promise of payment in the Settlement Agreement describes performance of the promise as the sole undertaking of the Corporation, we conclude the agreement does not reflect that Briggs promised the same performance. In the absence of a joint promise, the question becomes whether the payment obligation is joint and several.

■ Under the common law doctrine of joint, joint and several, and several obligations in a contract, the question is whether multiple promisors of the same performance have promised as a unit (jointly), or have promised the same performance separately (severally), or both as a unit and separately (jointly and severally). *See* JOHN D. CALAMARI AND JOSEPH M. PERILLO, CONTRACTS, § 20–1 (2d ed. 1982). The problem does not arise, however, unless the promises relate to the same performance. *Id.* Although an obligation entered into by more than one person is presumed to be joint, whether the liability of several promisors, whose interests are separate, are joint and several depends on the intention of the parties. *See* 14 Tex. Jur.3d *Contracts* § 203 (1997); *see also Qaddura v. Indo–European Foods, Inc.,* 141 S.W.3d 882, 891 (Tex.App.-Dallas 2004, pet. denied) (obligation of company and employee was joint where employee also signed settlement agreement and agreement did not evidence contrary intent). Joint and several liability arises in a contract based on the relationship of the parties and what amounts to joint promises. *CTTI Priesmeyer,* 164 S.W.3d at 684; RESTATEMENT

(SECOND) OF CONTRACTS § 13 IN NT (1981) (more common usage of joint and several liability refers to rights and duties created by promises of same performance). For example, when an instrument provides that "we or either of us" promise to pay, the liability of the parties will be deemed joint and several. *Guynn v. Corpus Christi Bank & Trust*, 620 S.W.2d 188, 190 (Tex.Civ.App.-Corpus Christi 1981, writ ref'd n.r.e.). When an obligation is joint and several, any one of the obligors may be held liable. 14 Tex. Jur.3d *Contracts* § 203 (1997).

██ Here, the relationship of the parties is not one in which joint and several liability typically arises because, as an officer of the Corporation, Briggs would not ordinarily be responsible for its debt. *See, e.g., In re Trammell*, 246 S.W.3d 815, 822 (Tex.App.-Dallas 2008, orig. proceeding) (officers or directors not necessary parties to a suit against the corporation for indebtedness because they are not personally liable for damages assessed against corporation based on contract). The contract never expressly stated that Briggs undertook a joint and several obligation to make payments. Nor did the contract implicitly create joint and several liability as it clearly stated in every reference to payment that payments were to be made by the Corporation. It is assumed that every clause in a contract is intended to have some effect. *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). In order to give effect to all of the terms of the Settlement Agreement, we cannot construe Briggs's signature as a releasing party and the language of release to do anything other than affect the mutual releases the parties intended. Because Briggs did not promise to make payments under the Settlement Agreement, we conclude the trial court erred in awarding a joint and several judgment for that obli-

gation. Issues 1 and 4(b)-(c) are sustained. In light of our disposition of these issues, we need not reach issues 2, 3 and 4(a). *See* TEX.R.APP. P. 47.1.

### The Order of Payments Under the Settlement Agreement

██ In issues 5, 6, and 7(a)-(c), Briggs and the Corporation argue the Settlement Agreement requires that debt payments be applied to the interest bearing obligations before the non-interest bearing obligations. According to Briggs and the Corporation, because the Europa Parties applied debt payments to the non-interest bearing obligation first, the amount of interest was incorrectly calculated and the final judgment awards an erroneous amount of actual damages.

Briggs and the Corporation rely on paragraph C(2) of the Settlement Agreement to establish that the Settlement Agreement dictates the sequence in which payments are to be applied. The Europa Parties respond that the Settlement Agreement is silent as to the sequence of payments. We agree with the Europa Parties.

Paragraph C(2) lists the EIL Loan Agreement, the Stewart Loan Agreement and the Stock Purchase Agreement in chronological order. Although the Settlement Agreement references the amount of the payments, the timing of the payments and the obligations to be satisfied by the payments, there is no mention of the sequence in which payments are to be applied. In Briggs's deposition testimony, included in the summary judgment record, Briggs admits that the Settlement Agreement does not specify the order of payments. The fact that the Settlement Agreement allowed the Europa Parties to determine the account to which payments would be credited is further supported by the language in paragraph C(2) which pro-

vides, "[the Europa Parties] shall provide [the Corporation] with written notice of what accounts [the Corporation] should transfer the funds into."

Because the Settlement Agreement is silent as to the order in which payments were to be credited, we conclude the Europa Parties were free to credit the accounts in any order they deemed appropriate. The summary judgment evidence establishes the amount due and owing under the Settlement Agreement, and the final judgment awards actual damages for this amount. Therefore, the amount of actual damages awarded is not in error. Issues 5, 6, and 7(a)-(c) are overruled.

### Attorney's Fees

 In issues 8 and 9(a)-(b), Briggs and the Corporation maintain the trial court erred in its award of attorney's fees. Briggs and the Corporation rely on *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex.1997) to argue that attorney's fees are excessive and unreasonable, particularly in light of the result obtained. The summary judgment evidence on attorney's fees consists of an affidavit by the Europa Parties' counsel and over 40 pages of billing statements. Where the testimony of an interested witness is not contradicted by any other witness and is clear, positive, direct, and free from contradiction, it is taken as true as a matter of law. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990). This is especially true where, as here, the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.* Briggs and the Corporation offered no competent summary judgment evidence to raise an issue of material fact as to whether the fees were necessary or reasonable. Because there is no issue of material fact, the attorney's fees award was not in error. *See Cap Rock Elec. Cooperative, Inc. v.*

*Texas Utilities Elec. Co.*, 874 S.W.2d 92, 101–102 (Tex.App.-El Paso 1994, no writ).

Briggs and the Corporation also rely on *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex.2006) to argue that the reduction in the amount of actual damages requires a reduction in the amount of fees awarded. Because we have concluded that there is no basis for a reduction of the amount of actual damages, there is no basis for a reduction in the amount of attorney's fees. Issues 8 and 9(a)-(b) are overruled.

### CONCLUSION

We reverse the judgment against Briggs individually and affirm the judgment against the Corporation.