**PURVIS OIL CORP., Appellant,**

v.

**Robert K. HILLIN and MS Oil Properties, Inc. d/b/a Hillin–Simon Oil Company, Appellees.**

No. 08–93–00445–CV.

Court of Appeals of Texas, El Paso.

Dec. 23, 1994.

Conrad Coffield, James M. Hudson, Midland, for appellant.

James P. Boldrick, Dick R. Holland, Boldrick, Clifton, Nelson & Holland, Midland, for appellees.

Before BARAJAS, C.J., and KOEHLER and McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a final summary judgment in a suit for declaratory judgment seeking interpretation of unambiguous oil and gas well joint operating agreements. In this suit initially brought by Appellant, both parties moved for summary judgment. The trial court granted Appellee's motion, determining that Appellee was the lawfully installed current operator of the wells in question and that a successor operator could be elected only if the current operator resigned or was removed in accordance with provisions of the agreement. The trial court also awarded Appellee its attorney's fees in the amount of $26,425. We affirm.

### RELEVANT FACTS

Tiburon Petroleum Corporation (Tiburon) was operator of certain oil and gas wells, located in Reagan, Sterling, and Dawson Counties in Texas, under joint operating agreements (JOAs), which governed the operations of such wells and which had been entered into and were binding on all parties owning interests in the wells. Tiburon filed a petition under Chapter 11 of the Bankruptcy Act in 1986. Claydesta National Bank (CDNB) bought Tiburon's interest in the wells on July 1, 1986. On August 1, 1986, Tiburon entered into a suboperating agreement with Hillin–Simon Oil Company[1] (Hillin), Appellees herein, which among other things anticipated that Hillin would be elected operator in the near future, at which time the suboperating agreement would termi-

nate. The JOAs under which Tiburon was operating requires that any successor operator must be selected from among the parties to the agreement owning oil and gas interests in the area covered by such agreements. It was contemplated that Hillin would acquire Tiburon's interest in the wells. In that connection, Tiburon, CDNB, and Hillin on August 1, 1986 entered into an agreement by the terms of which Hillin was to purchase Tiburon's and CDNB's interests in certain properties included in the JOAs. On October 27, 1986 and on February 25, 1987, the non-operators ratified the suboperating agreement and elected Hillin as operator.

In the meantime, Tiburon petitioned the bankruptcy court for approval to resign as operator, to which that court agreed on February 15, 1987, additionally approving and authorizing the assignment by Tiburon to Hillin of its rights to receive and disburse proceeds from oil and gas sales. A subsequent motion by CDNB to set aside the bankruptcy court's order approving Tiburon's resignation and substitution of Hillin resulted in another order, dated June 9, 1992, approving, ratifying, and reaffirming Tiburon's resignation as operator and the assignment of its rights to Hillin. After Hillin had been serving as operator for approximately one year, CDNB repudiated and withdrew its offer to sell to Hillin those interests it owned or had acquired from Tiburon.

However, effective August 1, 1987, Hillin acquired the interests of Everett Beckett in the wells. On December 1, 1988, Hillin acquired the interests of E. Ray Lewis in the wells. After Hillin had been serving as operator of the wells for approximately five years, Purvis in June 1991 purchased Tiburon's interests held by CDNB. Within a couple months after acquiring those interests in the wells, Purvis (proceeding on the premise that Hillin was not properly elected as operator because at the time it was so elected it did not own an interest in the areas covered by the agreements) polled the non-operating owners and was by a majority of them select-

---

1. Hillin–Simon Oil Company is a joint venture of Robert K. Hillin and MS Oil Properties, Inc.

ed operator. Purvis then attempted to assume operation of the wells, but Hillin refused to resign as operator or to relinquish its operation of the wells. Purvis then brought this action for declaratory judgment, injunctive relief, and interference with business relations.[2]

■ Purvis' Points of Error Nos. One and Two concern the trial court's interpretation of the JOAs. Specifically, Purvis challenges Hillin's status as operator which that court upheld by its grant of Hillin's motion for summary judgment based upon its interpretation of the provision relating to the selection of an operator to succeed an operator which has resigned or been removed. Purvis bases its challenge of Hillin's status as Operator on paragraph B(2) asserting that because Hillin did not "own an interest in the Contract Area" at the time it was selected as operator that it was never lawfully selected as the successor operator.

■ When the interpretation of a contract is in issue, the court must first determine whether or not the provisions in question are ambiguous. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *Cap Rock Elec. Coop., Inc. v. Texas Util. Elec. Co.,* 874 S.W.2d 92, 99 (Tex.App.—El Paso 1994, no writ). A contract is ambiguous if, after examining the contract as a whole in light of the circumstances existing at the time the contract was signed and after applying the rules of construction, its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker,* 650 S.W.2d at 393; *Cap Rock,* 874 S.W.2d at 99. Neither of the parties argue that the terms of these agreements are ambiguous; they simply disagree over their construction and interpretation. We agree that the provision in question is not ambiguous. A disagreement over the meaning of a contract provision does not render the provision ambiguous. *First City Nat'l Bank of Midland v. Concord Oil Co.,* 808 S.W.2d 133, 136 (Tex. App.—El Paso, 1991, no writ). When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to and harmonize all provisions so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393; *First City Nat'l. Bank,* 808 S.W.2d at 136; *KMI Continental Offshore Production Co. v. ACF Petroleum Co.,* 746 S.W.2d 238, 241 (Tex.App.—Houston [1st Dist.] 1987, writ denied). The intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written. *Sun Oil Company (Delaware) v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981).

■ Legal conclusions of a trial court are always reviewable on appeal. *Cap Rock,* 874 S.W.2d at 99. Legal conclusions of a trial court are given no particular deference at the appellate level. Rather, as the final arbiter of the law, the appellate court has the power and the duty to evaluate independently the legal determinations of the trial court. *Cap Rock,* 874 S.W.2d at 99; *Sears, Roebuck and Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied).

Resolution of this case turns upon the interpretation of two contract provisions which

---

**2.** It should be noted that a majority of the working interest owners filed an amicus brief in this case in support of Purvis and requesting that this Court remove Hillin as operator. The owners allege that allowing Hillin to continue as operator works to undermine their rights and will have an adverse economic impact on their investment. Assuming that the owners' allegations are true, their assertions still would not change the outcome of this suit. The JOA has a specific provision relating to the removal of an operator if its performance is lacking. Neither Purvis nor the owners attempted to remove Hillin on the grounds stated in, and in accordance with, that provision. Therefore they cannot now base their appeal to this Court on such grounds. The proper forum for this complaint would be in a trial court in a new suit alleging proper grounds for removal of the current operator rather than attacking the legality of its initial installation as operator.

deal with the removal and resignation of the current operator and the selection of a successor operator. The pertinent provisions are found in Article V of the JOAs:

B. Resignation or Removal of Operator and Selection of Successor:

1. *Resignation or Removal of Operator:* Operator may resign at any time by giving written notice thereof to Non–Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non–Operators, *except the selection of a successor.* Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership, by the affirmative vote of two (2) or more Non–Operators owning a majority interest based on ownership as shown on Exhibit 'A' remaining after excluding the voting interest of Operator.... [Emphasis added].

2. *Selection of a Successor Operator:* Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit 'A';
....

Both parties agree that Hillin was lawfully installed as suboperator of the wells, that Tiburon resigned due to its bankrupt status in accordance with the JOAs, and that the Bankruptcy Court for the Western District of Texas approved this resignation and the assignment of all of its duties as operator to Hillin. This was reaffirmed by order of the same court on June 9, 1992. Furthermore, the record reflects that in 1986 and 1987, Hillin was selected as operator by an "affirmative vote of two or more parties owning a majority interest." At the time of selection, Hillin made it clear on the polling forms that it did not currently own, but intended to purchase, an interest in the Contract Area.

Paragraph B(1) states that: "[i]f Operator ... no longer owns an interest hereunder in the Contract Area ... Operator shall be deemed to have resigned...." The election of Hillin as Operator both on October 27, 1986 and February 15, 1987 was defective because Hillin did not own an interest in the Contract Area at the time of its election. Based on that clause, the JOAs could be interpreted to mean that Hillin was deemed to have resigned immediately upon election, a rather absurd result. However, Paragraph B(1) goes on to provide that the "Operator shall be deemed to have resigned without any action by Non–Operators, *except the selection of a successor.*" [Emphasis added]. Reading the sentence in its entirety makes it apparent that action by the non-operators is required, namely they must select a successor operator before the operator will be deemed to have resigned. This interpretation makes sense because in the normal course of events, it would be preferable to have the current operator remain in place until a successor operator could be selected and an orderly change take place.

Looking at the situation in another way, Hillin's status as successor operator was from the start lawful by virtue of the assignment by Tiburon, by the authorization and approval of the Bankruptcy Court and by the vote of the owners of interests covered by JOAs. Absent the selection of a properly qualified successor operator, Hillin's status as operator continued to be lawful. In other words, Hillin could have been removed by the parties owning interests in the area covered by the JOAs by selection of a qualified successor operator during the period in which Hillin owned no such interest. However, this never happened because Hillin became qualified when it acquired the Beckett interest in August 1987. Having become qualified, Hillin can only be removed as operator in accordance with the provisions of the JOAs relating to removal.

Additionally, we hold that Hillin established as a matter of law its defense of waiver. A majority of the interest owners, by voting for or assenting to the selection of Hillin as successor operator even though they knew or should have known that Hillin had not yet acquired an interest in the contract area, waived the ownership requirement of the JOAs. It appears uncontroverted that all of the interest owners, including CDNB[3] which was instrumental in getting Hillin involved first as a suboperator under Tiburon and then installed as Tiburon's successor operator, accepted the benefits of Hillin's performance for a period of time and were actually or constructively aware that Hillin, in reliance on its ratification as suboperator and successor operator expended time, effort, and expense to operate the properties.

Any contractual right can be waived. *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 592 (Tex.App.—Dallas 1991, Dism'd w.o.j.). A waiver is an intentional release, relinquishment, or surrender of a known right. *Massachusetts Bonding and Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex.1967); *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right. *Huffington v. Upchurch*, 532 S.W.2d 576, 580 (Tex.1976); *Horton v. Robinson*, 776 S.W.2d 260, 264 (Tex.App.—El Paso 1989, no writ). The requirement that a "successor operator shall be selected from the parties owning an interest" at the time of its selection is in the nature of a condition precedent. The performance of a condition precedent can be waived by words or inferred from a party's conduct. *Sun Exploration and Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987); *Ames v. Great Southern Bank*, 672 S.W.2d 447, 449 (Tex.1984). Here, we have not only a number of the interest owners selecting Hillin as successor operator by

their "ballots" but acceptance by all of the interest owners of the benefits of Hillin's performance during the period in which it could have been removed by the selection of another successor operator. Even if there had been no waiver of the "owning an interest" requirement, Hillin's subsequent acquisition of an interest in the areas covered by the JOAs on August 1, 1987 (approximately four years prior to Purvis' acquisition of the CDNB interests in the property and its attempted selection as successor operator) cured any defect in the ownership condition. As of that date, Hillin was the lawfully installed operator and could only be removed in accordance with the provisions of paragraph B(1). Consequently, Purvis' attempts in 1991 to rely on paragraph B(2) to install itself as operator were ineffective because as of that date "resignation or removal of Operator" had not occurred; therefore, paragraph B(2) was inapplicable. The question of whether, as of that date, grounds existed, or presently exist, for Hillin's removal under paragraph B(1) was not a matter before the trial court and is not therefore a matter we can consider. Paragraph B provides the only means for removal of a current operator and without resignation or removal in accordance with its terms there can be no selection of a successor operator, even with an "affirmative vote of two or more parties owning a majority interest." Therefore, Purvis' selection as successor operator was ineffective. Points of Error Nos. One and Two are overruled.

In its third point of error, Purvis challenges the trial court's award of attorney's fees to Hillin. In reviewing a summary judgment appeal, we must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evi-

---

3. Although CDNB subsequently in April 1988 moved the Bankruptcy Court to set aside its prior order authorizing Tiburon's resignation and as-

signment of its obligations as operator to Hillin, this came after Hillin had acquired its first interest in August 1987.

dence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49.

■ Purvis challenges this award of attorney's fees on three grounds: first, the award is predicated upon false testimony and the trial court abused its discretion by making the award; second, attorney fees were never properly requested by Hillin under the Declaratory Judgment Act; and third, Hillin's attorney, James Boldrick (Boldrick), was neither properly nor timely designated as an expert and therefore his affidavit was not competent summary judgment evidence.

■ The amount of an award of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of abuse of discretion. *Cap Rock*, 874 S.W.2d at 101; *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Reintsma v. Greater Austin Apartment Maintenance*, 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd). Purvis alleges that Hillin's award of attorney's fees was based upon Boldrick's affidavit. In the affidavit, Boldrick stated that Hillin was billed upon an hourly basis and that the amount of fees incurred in the preparation of Hillin's motion for summary judgment, as of the date of the affidavit, was approximately $35,000. Boldrick further testified that these fees were reasonable and necessary for a case of this type, given the complexity of the legal matters involved.

Purvis, in response to Hillin's motion for attorney's fees, filed a controverting affidavit challenging the amount of attorney's fees at trial. Purvis then sought leave to engage in discovery regarding the reasonableness and the amount of fees requested. Through discovery, by the deposition testimony of Boldrick and his law firm's invoices, it was established that the total attorney's fees billed to Hillin were $26,425.[4]

Purvis asserts that because Boldrick overestimated its billings by $8,575, his affidavit cannot constitute competent summary judgment evidence on the issue of attorney's fees and therefore, there is "absolutely" no evidence upon which to predicate the award of attorney's fees. Purvis' logic does not stand up to scrutiny. Purvis has affirmatively stated, and the record clearly reflects, that *it* presented evidence in the form of deposition testimony and invoices which conclusively established that Hillin incurred $26,425 in attorney's fees, the amount awarded Hillin in the summary judgment. Such evidence constitutes competent summary judgment evidence no matter which party may have presented it. Purvis has not cited, nor do we find any case law, which prevents the trial court from considering summary judgment evidence produced by the nonmovant in favor of the movant's motion. On the contrary, we are merely constrained to take whatever evidence was presented in a light most favorable to Purvis.

Had Purvis by its affidavit merely controverted Hillin's affidavit as to attorney's fees, a fact issue would have been presented and summary judgment would not have been proper on this issue. *American 10–Minute Oil Change, Inc. v. Metropolitan Nat'l Bank–Farmer's Branch*, 783 S.W.2d 598, 602 (Tex.App.—Dallas 1989, no writ); *First Fed. Sav. & Loan Ass'n v. Bustamante*, 609 S.W.2d 845, 849 (Tex.Civ.App.—San Antonio 1980, no writ). Purvis however, went one step further and conclusively established Hillin's attorney's fees, therefore supporting summary judgment on this issue. Accordingly, in light of the trial court's reduction of attorney's fees to the amount proved by invoices we do not find that the court's consideration of the evidence adduced by Purvis on

---

4. We see nothing fatally inconsistent in an attorney testifying in a deposition that he has billed his client by invoices totalling $26,425 and in his affidavit, stating that "reasonable and necessary attorney's fees incurred by Hillin–Simon in the preparation of this matter is in the approximate amount of $35,000."

the issue of attorney's fees constituted an abuse of discretion.

Furthermore, even if such evidence were deemed not to constitute competent summary judgment evidence, the award would still stand because the court is free to take judicial notice of the usual and customary attorney's fees for the services provided. *Cap Rock,* 874 S.W.2d at 101 ("trial court may take judicial knowledge of the usual and customary attorney's fees for the legal services provided by the movant's attorneys, even though no request was made for the trial court to do so and the trial court did not formally announce that it had done so") citing TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986); *Ho v. Wolfe,* 688 S.W.2d 693, 697 (Tex.App.—Amarillo 1985, no writ); *Holsworth v. Czeschin,* 632 S.W.2d 643, 645 (Tex.App.—Corpus Christi 1982, no writ). Moreover, an appellate court when reviewing the judgment of the trial court may presume that the trial court did take such judicial notice. *Holsworth,* 632 S.W.2d at 645.

Purvis next challenges the trial court's award of attorney's fees based on a claim that Hillin failed to request such fees under the Declaratory Judgment Act. Section 37.009 provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). In Hillin's amended answer, it specifically requests an award of attorney's fees pursuant to Section 37.009 of the Texas Civil Practices and Remedies Code (Uniform Declaratory Judgments Act). The trial court in its summary judgment specifically awarded Hillin attorney's fees pursuant to Section 37.009. However, notwithstanding these facts, Purvis asserts, unsupported by any authority, that because Hillin failed specifically to request attorney's fees under Section 37.009 in its motion for such fees that it cannot now recover under this provision. This Court is not aware of any case law supporting this assertion. We conclude that it is not necessary for a party moving for attorney's fees in a declaratory judgment action to specify the statutory authority for such an award in the motion, so long as the party pled for attorney's fees. *Cap Rock,* 874 S.W.2d at 102; *Housing Authority of the City of Harlingen v. Valdez,* 841 S.W.2d 860, 868 (Tex.App.—Corpus Christi 1992, writ denied): See *District Judges of Collin County v. Commissioners Court of Collin County,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The same reasoning and conclusion applies to Purvis' claim that the award of fees is precluded by the fact that Hillin's motion was never filed with the trial court because Hillin did plead for attorney's fees in its amended answer and it is discretionary with the trial court, absent a clear showing of an abuse of discretion, whether or not to make such an award. *Housing Authority,* 841 S.W.2d at 868; *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 448–49 (Tex.App.—Corpus Christi 1990, writ denied).

Lastly, Purvis challenges the award of attorney's fees on the ground that Boldrick was not properly and timely identified as an expert witness, and his affidavit was not presented to the trial court until after the summary judgment hearing and therefore could not constitute competent summary judgment evidence. Purvis contends that Hillin's failure to designate him as an expert witness in response to interrogatories results in automatic exclusion of his affidavit. In support of this position, Purvis cites *Morrow v. H.E.B. Inc.,* 714 S.W.2d 297, 298 (Tex.1986) and *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987), both of which are inapposite to the facts of this case. In both *Morrow* and *Youngblood,* the exclusion of the testimony was done under *Rule 166b(6)* which relates to the duty to supplement before trial and the exclusion of testimony at trial. *Rule 166a* sets forth the rules applicable to summary judgment practice. In a summary judgment proceeding, there is no duty to supplement answers to interrogatories in order to use an affidavit of a previously undisclosed witness. *Huddleston v. Maurry,* 841 S.W.2d 24, 28 (Tex.

App.—Dallas 1992, writ dism'd w.o.j.); *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex. App.—Corpus Christi 1988, no writ); Tex. R.Civ.P. 166a. Purvis also claims that Hillin's motion for attorney's fees and the Boldrick affidavit in support thereof were not presented to the trial court prior to its hearing on the summary judgment motions and therefore, under Rule 166a, they should not have been considered by the trial court. The record reflects that the trial court held its hearing on the motions for summary judgment on October 21, 1992. Hillin's motion for attorney's fees and the supporting affidavit were submitted to the trial court after the judge indicated to the parties by letter dated January 5, 1993 that he intended to grant Hillin's motion and deny Purvis' motion for summary judgment. Purvis argues that Hillin's failure to present proof of attorney's fees at the hearing on summary judgment waives any claim for attorney's fees. However, Hillin's motion for such fees was filled prior to the granting of the summary judgment in its favor and therefore Hillin did not waive its claim for attorney's fees. *Cap Rock*, 874 S.W.2d at 101. Point of Error No. Three is overruled.

■■■ In its Cross-point of Error No. Two[5], Hillin complains of the trial court's failure to award it attorney's fees on appeal. The record reflects that in its motion for attorney's fees, Hillin specifically requested the award of attorney's fees in the event the summary judgment was appealed. This motion was supported by the Boldrick affidavit in which he stated that $10,000 would be reasonable and necessary fees for responding to an appeal to the Court of Appeals; that $5,000 would be reasonable and necessary fees for applying or responding to a writ of error to the Texas Supreme Court and that in the event writ was granted, reasonable and necessary fees of $5,000 would be required.

The record reflects that although Purvis controverted Hillin's summary judgment evidence as to the award of attorney's fees at the trial level, there was no challenge made as to the testimonial estimate of fees required in the event of appeal. This evidence was therefore uncontroverted and therefore an award of attorney's fees on appeal probably should have been granted. See Tex. R.Civ.P. 166a(c) ("[a] summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."). *See American 10–Minute Oil Change*, 783 S.W.2d at 602; *Bado Equipment Co., Inc. v. Ryder Truck Lines Inc.*, 612 S.W.2d 81, 83 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). However, Section 37.009 of the Declaratory Judgment Act, Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1986) provides that "the court may award ... reasonable and necessary attorney's fees as are equitable and just." The decision of whether or not to grant attorney's fees is within the discretion of the trial court and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985); *Graham v. Kuzmich*, 876 S.W.2d 446, 449 (Tex.App.—Corpus Christi 1994, no writ); *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 768 (Tex.App.—El Paso 1993, no writ); *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 708 (Tex. App.—El Paso 1993, no writ). Hillin has not made a clear showing in its brief, nor has our review of the record found any evidence, of an abuse of discretion in this regard. *Oake*, 692 S.W.2d at 456. We overrule Hillin's Cross-point Two.

Having overruled all of Purvis' points of error and Hillin's Cross-point No. Two, the judgment of the trial court is affirmed.

■■■

---

**5.** Hillin's Cross-point of Error No. One was conditional on our holding that the trial court erred in failing to grant Purvis' motion for partial summary judgment. In view of our overruling of all of Purvis' points of error, we need not address this cross-point.