NUMBER 13-01-362-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




ALAN F. LUCKE,                                                              Appellant,

v.

JANICE E. KIMBALL,                                                          Appellee.




On appeal from the 319th District Court
of Nueces County, Texas.




MEMORANDUM OPINION

Before Justices Yañez, Castillo, and Dorsey



Opinion by Justice Castillo

         This is a breach-of-fiduciary-duty suit for dissolution of an accounting
partnership and distribution of its assets. In four issues, appellant Alan F. Lucke
asserts: (1) appellee Janice E. Kimball, as a withdrawing partner, was not entitled to
receive the net value of her partnership interest but rather was limited to an amount
specified in the parties' partnership agreement; (2) the evidence is insufficient to
support the damages found by the jury; (3) Kimball is not entitled to ten percent
prejudgment interest; and (4) Kimball is not entitled to a declaratory judgment because
she sought declaratory relief on issues either not in controversy or that mirrored the
monetary judgment she received. Kimball raises two conditional issues on cross-appeal: (1) the jury's failure to find fraud or malice is against the great weight and
preponderance of the evidence; and (2) the trial court abused its discretion in refusing
to admit evidence that Lucke and Kimball agreed before Kimball's withdrawal that the
parties' partnership agreement was no longer in effect. We affirm. 
I. BACKGROUND FACTS
A. The Partnership Interests
         Lucke formed an accounting partnership with Rogers Rainey in 1987. Initially,
Lucke and Rainey were equal partners. Kimball and a fourth accountant, Thomas
Schroeder, joined the partnership in 1991. Expressly electing to be governed by the
Texas Uniform Partnership Act,


 the four partners signed an agreement for Rainey,
Lucke and Associates, L.L.P. in January 1992 (the "Partnership Agreement"). The
Partnership Agreement reflected that as of January 1, 1991, Rainey and Lucke each
sold 9% of their respective interests to Schroeder and 6% to Kimball. Thus, Rainey
and Lucke each retained a 35% interest in the partnership, Schroeder acquired an 18%
interest, and Kimball acquired 12%. The initial value assigned to the partnership's
assets was $5,000.00. Therefore, the Partnership Agreement provided that Schroeder
paid $900.00 for his interest and Kimball $600.00 for hers. The Partnership
Agreement also required Schroeder and Kimball to make guaranteed payments to
Rainey and Lucke over time. Kimball's guaranteed payments over six years totaled
$38,400.00, which she paid in full. 
         A fifth accountant, Ward McCampbell, joined the partnership in January 1993. 
He acquired an 11% interest. Rainey and Lucke's interests each dropped to 31%,
Schroeder's to 16%, and Kimball's to 11%. In June 1993, Rainey died. The partners
reallocated Rainey's interest, so that Lucke then owned 44.93%, Schroeder 32.19%,
and Kimball and McCampbell 15.94% each. The partnership began making payments
to Rainey's estate in accordance with the Partnership Agreement. 
         Schroeder withdrew from the partnership in October 1993. The parties
negotiated a buy-out of Schroeder's partnership interest in the net amount of
$50,000.00-$60,000.00, including work-in-progress, accounts receivable,
and 32.19% of the partnership's net profits, less his unpaid guaranteed payments. 
The partners reallocated the remaining partners' interests. Lucke's interest increased
to 58.8%. Kimball and McCampbell's interests each increased to 20.75%. In
January 1995, the three remaining partners agreed to another reallocation of
partnership interests. Lucke's interest decreased to 51%. Kimball and McCampbell's
interests each increased to 24.5%. 
         McCampbell withdrew from the partnership in September or October 1996. The
parties negotiated a buy-out of McCampbell's partnership interest in the net amount
of $31,933.00, including work-in-progress, accounts receivable, and 24.5% of the
partnership's net profits, less his unpaid guaranteed payments. Following
McCampbell's withdrawal, Lucke's interest increased to 67.55% and Kimball's
to 32.45%. 
         Kimball gave oral notice of her withdrawal from the partnership effective
January 31, 1997. In February 1997, Lucke informed Kimball in writing that he would
continue the partnership's business without liquidation. Kimball objected. Lucke
tendered $600.00 to Kimball as payment for her interest. Kimball demanded 32.45%
of the partnership's net assets. Lucke refused. The partnership's final tax return
showed that it operated only in January of 1997. Lucke began operating Rainey,
Lucke and Associates as a sole proprietorship. 

B. The Terms of the Partnership Agreement at Issue
         Lucke relies on two provisions of the Partnership Agreement as support for his
position that Kimball is limited to recovering $600.00 for her partnership interest:
5.04Payment for Partnership Interest. Within thirty (30) days
after the withdrawal, death or retirement of Kimball, she or her
beneficiary shall be paid $600 for her interest in the partnership. 

* * *
 
9.01Events of Dissolution. The partnership shall be dissolved
upon the affirmative vote of fifty-one percent (51%) in interest, not in
numbers, of the partners or upon the sale of substantially all of the
assets of the partnership. It is the intention of the partners that this be
the exclusive method of dissolving the partnership and each partner
agrees that if he takes any other action which would cause dissolution
of the partnership under the Texas Uniform Partnership Act, such action
shall be deemed to be an election by such partner to withdraw from the
partnership in accordance with Section 8.01. 

         Section 8.01 reads:
 
8.01Withdrawal of a Partner. Any partner may withdraw from
the partnership at the end of any calendar quarter by giving sixty (60)
days written notice thereof to the other partners. . . . 

         Kimball relies on the following provisions as supporting her position that she is
entitled to the net value of her partnership interest:
9.02Dissolution and Winding Up. Upon the dissolution of the
partnership, the partners shall have the responsibility for expeditiously
liquidating the assets of the partnership. They shall promptly proceed to
wind up the affairs of the partnership, and after payment (or making
provision for payment) of liabilities owing to creditors (excluding
partners), shall cause the remaining net assets to be distributed to the
partners as follows:

* * *
 
(c)There shall be distributed to each partner, out
of the next available net assets, an amount equal to his
percentage interest in the partnership multiplied by $5000. 

(d)The remaining net assets, if any, shall be
distributed to the partners in proportion to their respective
percentage interests in the profits of the partnership. . . . 

         The trial court agreed with Kimball as a matter of law. It instructed the jury that
"[u]pon dissolution, the partners are entitled to have the partnership property applied
to discharge the liabilities and the surplus applied to pay in cash the net amount owing
to the respective partners." 
C. The Jury Verdict
         The jury found Kimball's share of the value of the net assets of the partnership
as of January 31, 1997 to be $85,000.00. The jury also found that Lucke breached
his fiduciary duty to Kimball. It declined to find fraud or malice. Finally, the jury found
$36,735.00 in reasonable attorney fees for trial of the case. 
D. The Judgment
         The judgment awarded Kimball $85,000 plus 10% pre-judgment interest from
March 13, 1997 through the date of judgment in the amount of $33,347.85. It also
awarded Kimball $36,735.00 as trial attorney fees, conditional appellate attorney fees,
and 10% post-judgment interest. Finally, the trial court granted the following
declaratory relief:
(1)The partnership between Plaintiff and Defendant known as Rainey,
Lucke & Associates, L.L.P., dissolved as of January 31, 1997; and
 
(2)Plaintiff is entitled to her share of the value of the net assets of
the partnership, as determined by the jury. 

II. THE CONTRACT INTERPRETATION ISSUE
         Lucke first challenges the trial court's legal conclusion that Kimball is entitled
to any amount other than the $600.00 recited in paragraph 5.04 of the Partnership
Agreement. He argues that the Partnership Agreement expressly provided that an
exiting partner would receive more than the initial cash investment in only three
circumstances: death, retirement, or a majority-approved dissolution. He maintains
that only on a majority-approved dissolution would the exiting partner be entitled to
receive a percentage of the partnership's net assets. Since Kimball and he were the
only remaining partners, he argues, Kimball's unilateral withdrawal without his consent
effected a dissolution of the partnership by operation of law, not a majority-approved
dissolution pursuant to paragraph 9.02. 
         Kimball responds that the initial $5,000.00 valuation of the partnership, and the
resulting nominal valuation of her partnership interest as $600.00, was for tax
purposes only. She argues that future amounts paid to withdrawing, retiring, or
deceased partners in excess of the agreed nominal values were tax deductible by the
partnership. She points out that Schroeder and McCampbell received the net value of
their partnership interests when they withdrew, not the nominal value. 
         Lucke counters that the terms of Schroeder's buy-out were different because
Schroeder left the firm at Lucke's request as a result of a client conflict. He points out
that the parties acknowledged in a written "Agreement Incident to Withdrawal" that
Schroeder's buy-out conflicted with the terms of the Partnership Agreement. Further,
Lucke argues, the terms of McCampbell's buy-out were different because McCampbell
had not signed the Partnership Agreement. 
A. The Standard of Review
         When the interpretation of a contract is at issue, the trial court must first
determine whether the provisions in question are ambiguous. Coker v. Coker,
650 S.W.2d 391, 394 (Tex. 1983); Pegasus Energy Group, Inc. v. Cheyenne
Petroleum Co., 3 S.W.3d 112, 120 (Tex. App.–Corpus Christi 1999, pet. denied). 
The question of whether a contract is ambiguous is a question of law for the trial
court's determination. Coker, 650 S.W.2d at 394; Pegasus Energy Group, 3 S.W.3d
at 120. A contract is ambiguous if it is reasonably susceptible of more than one
meaning. Coker, 650 S.W.2d at 393; Pegasus Energy Group, 3 S.W.3d at 120. Here,
neither of the parties argues that the terms of the Partnership Agreement are
ambiguous; they simply disagree over the construction and interpretation of its terms.
A disagreement over the meaning of a contract provision does not render the provision
ambiguous. Pegasus Energy Group, 3 S.W.3d at 121 (citing First City Nat'l Bank of
Midland v. Concord Oil Co., 808 S.W.2d 133, 136 (Tex. App.–El Paso 1991, no
writ)). 
         When the parties disagree over the meaning of an unambiguous contract, the
court must determine the parties' intent by examining and considering the entire
writing in an effort to give effect to the parties' intentions as expressed in the
contract. Coker, 650 S.W.2d at 393; Pegasus Energy Group, 3 S.W.3d at 121 (citing
First City Nat'l Bank, 808 S.W.2d at 136; KMI Continental Offshore Prod. Co. v. ACF
Petroleum Co., 746 S.W.2d 238, 241 (Tex. App.–Houston [1st Dist.] 1987, writ
denied)). The intent of the parties must be taken from the agreement itself, not from
the parties' present interpretation. Pegasus Energy Group, 3 S.W.3d at 121 (citing
Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 731-32 (Tex. 1981)). The trial
court must enforce an unambiguous agreement as it is written. Pegasus Energy
Group, 3 S.W.3d at 121 (citing Sun Oil Co., 626 S.W.2d at 731-32). 
         Legal conclusions of the trial court are always reviewable. Pegasus Energy
Group, 3 S.W.3d at 121. We are not obligated to give any particular deference to
those conclusions. Id. (citing Montanaro v. Montanaro, 946 S.W.2d 428, 431 (Tex.
App.–Corpus Christi 1997, no writ)). We review questions of law de novo. Pegasus
Energy Group, 3 S.W.3d at 121 (citing State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996)
(op. on reh'g); Marsh v. Marsh, 949 S.W.2d 734, 739 (Tex. App.–Houston [14th
Dist.] 1997, no writ)). As the final arbiter of the law, we have the power and the duty
to independently evaluate the legal determinations of the trial court. Pegasus Energy
Group, 3 S.W.3d at 121 (citing Purvis Oil Corp. v. Hillin, 890 S.W.2d 931, 935 (Tex.
App.–El Paso 1994, no writ); Sears, Roebuck & Co. v. Nichols, 819 S.W.2d 900, 903
(Tex. App.–Houston [14th Dist.] 1991, writ denied); MJR Corp. v. B & B Vending Co.,
760 S.W.2d 4, 10 (Tex. App.–Dallas 1988, writ denied)). 
         We uphold a trial court's legal conclusions unless they are erroneous as a matter
of law. Pegasus Energy Group, 3 S.W.3d at 121 (citing Montanaro, 946 S.W.2d
at 431; Hofland v. Fireman's Fund Ins. Co., 907 S.W.2d 597, 599 (Tex. App.–Corpus
Christi 1995, no writ). In reviewing challenges to the trial court's conclusions of law,
we sustain the judgment on any legal theory supported by the evidence. In re
A.M., 101 S.W.3d 480, 484-85 (Tex. App.–Corpus Christi 2002, no pet.). We do not
reverse an incorrect conclusion of law if the findings of fact support a correct legal
theory. Id. at 485. 
B. The Uniform Partnership Act of Texas
1. Dissolution
         The Uniform Partnership Act of Texas (the "Partnership Act")


 addresses three
different concepts: "dissolution," "winding up," and "termination." Woodruff v.
Bryant, 558 S.W.2d 535, 538 (Tex. Civ. App.–Corpus Christi 1977, writ ref'd n.r.e.). 
Dissolution is defined as the change in the relationship of the partners caused by any
partner ceasing to be associated in the carrying on of the partnership. Tex. Rev. Civ.
Stat. Ann. art. 6132b, § 29; Woodruff, 558 S.W.2d at 538-39. Dissolution is
distinguished from both the winding up of the business of the partnership and its
termination. Generally, when a partnership dissolves, the partnership continues during
the period of winding up until all pre-existing matters are concluded. See Tex. Rev.
Civ. Stat. Ann. art. 6132b, § 30); Woodruff, 558 S.W.2d at 538-39. As an act that
actually changes the legal relationships between the partners, dissolution has nothing
to do with whether the partnership business is continuing or winding up. Woodruff,
558 S.W.2d at 538-39. Dissolution is a technical legal concept, unlike the concept
of dissolution in other areas, such as corporations. Id. 
         Causes of dissolution are set out in sections 31 and 32 of the Partnership Act.
Tex. Rev. Civ. Stat. Ann. art. 6132b, §§ 31, 32; Woodruff, 558 S.W.2d at 539. 
Dissolution occurs immediately on the happening of the specified event. Woodruff,
558 S.W.2d at 539. At common law, a partner could dissolve a partnership by
giving explicit notice to the other partners. Id. (citing Green v. Waco State
Bank, 14 S.W. 253 (Tex. 1890)). Section 31 codifies this common-law rule by
providing that dissolution can be caused by the "express will" of any partner. Tex.
Rev. Civ. Stat. Ann. art. 6132b, §§ 31(b); Woodruff, 558 S.W.2d at 539. The
causes for dissolution set out in section 31 are automatic. Woodruff, 558 S.W.2d
at 539. 
         Dissolution does not necessarily terminate the partnership business. 
Woodruff, 558 S.W.2d at 538-39. Even if the business does not continue, the
partnership continues to exist for the limited purpose of winding up. Tex. Rev. Civ.
Stat. Ann. art. 6132b, § 30; Tex. Westheimer Corp. v. 5647 Westheimer
Assocs., 68 S.W.3d 15, 22 (Tex. App.–Houston [1st Dist.] 2001, pet. denied);
Woodruff, 558 S.W.2d at 539. Only on termination does the partnership relationship
cease to exist. Woodruff, 558 S.W.2d at 539. 
2. Distribution of Assets
         Section 38 of the Partnership Act governs the rights of partners to application
of partnership property on dissolution: 
(1)When dissolution is caused in any way, except in
contravention of the partnership agreement, each partner, as against his
co-partners and all persons claiming through them in respect of their
interests in the partnership, unless otherwise agreed, may have the
partnership property applied to discharge its liabilities, and the surplus
applied to pay in cash the net amount owing to the respective partners.
But if dissolution is caused by expulsion of a partner, bona fide under
the partnership agreement and if the expelled partner is discharged
from all partnership liabilities, either by payment or agreement under
Section 36(2), he shall receive in cash only the net amount due him from
the partnership. 
  
(2)When dissolution is caused in contravention of the
partnership agreement the rights of the partners shall be as follows: 
  
(a)Each partner who has not caused dissolution
wrongfully shall have, 
  
(I)All the rights specified in paragraph (1) of this
Section, and 
 
(II)The right, as against each partner who has
caused the dissolution wrongfully, to damages for breach of
the agreement. 
 
(b)The partners who have not caused the dissolution
wrongfully, if they all desire to continue the business in the same
name, either by themselves or jointly with others, may do so,
during the agreed term for the partnership and for that purpose
may possess the partnership property, provided they secure the
payment by bond approved by the court, or pay to any partner
who has caused the dissolution wrongfully, the value of his
interest in the partnership at the dissolution, less any damages
recoverable under clause (2aII) of this Section, and in like manner
indemnify him against all present or future partnership liabilities. 
  
(c)A partner who has caused the dissolution wrongfully
shall have: 
 
(I)If the business is not continued under the
provisions of paragraph (2b) all the rights of a partner under
paragraph (1), subject to clause (2aII), of this Section, 
  
(II)If the business is continued under paragraph
(2b) of this Section the right as against his co-partners and
all claiming through them in respect of their interests in the
partnership, to have the value of his interest in the
partnership, less any damages caused to his co-partners by
the dissolution, ascertained and paid to him in cash, or the
payment secured by bond approved by the court, and to be
indemnified against all existing liabilities of the partnership;
but in ascertaining the value of the partner's interest the
value of the good-will of the business shall not be
considered. 

Tex. Rev. Civ. Stat. Ann. art. 6132b, § 38.  
C. Application of the Law to the Facts
1. Dissolution
         Lucke argues that Kimball could exercise her power to dissolve the partnership
only if she complied with the dissolution procedures contemplated by the Partnership
Agreement. This is not so. The Partnership Act codified the common-law rule that
every partner has the inherent power to dissolve a partnership even if the partnership
agreement attempts to limit the right to do so. Id.; Woodruff, 558 S.W.2d at 539.
This is true even if a partner's exercise of the right to dissolve breaches the partnership
agreement. Tex. Rev. Civ. Stat. Ann. art. 6132b, §§ 31, 32, 38; Woodruff,
558 S.W.2d at 539. Dissolution that breaches the partnership agreement renders the
dissolving partner liable for damages resulting from the breach. Woodruff,
558 S.W.2d at 539. Further, dissolution occurs when any partner withdraws from the
partnership, no matter the number of remaining partners. See id. Thus, Kimball's
withdrawal from the partnership and the withdrawals of Schroeder and McCampbell
all had the same effect: dissolution of the partnership. See id. Accordingly, we hold
that Kimball exercised her inherent power to dissolve the partnership when she gave
Lucke oral notice of her withdrawal effective January 31, 1997. See id. 
2. Distribution
         If Kimball's dissolution of the partnership did not breach the Partnership
Agreement, she is entitled to payment in cash of the net amount owing to her from
any surplus after the partnership property is applied to discharge its liabilities. See 
Tex. Rev. Civ. Stat. Ann. art. 6132b, § 38(1). If: (1) Kimball's dissolution of the
partnership breached the Partnership Agreement; and (2) the partnership business
continued, she is entitled to the value of her partnership interest paid to her in cash
without considering the value of the good will of the business, less damages for the
breach, and indemnity for any existing liabilities. See Tex. Rev. Civ. Stat.
Ann. art. 6132b, § 38(2)(c)(II). If: (1) Kimball's dissolution of the partnership
breached the Partnership Agreement; and (2) the partnership business did not
continue, she is entitled to payment in cash of the net amount owing to her from any
surplus after discharge of the partnership's liabilities, less damages for the breach. 
See Tex. Rev. Civ. Stat. Ann. art. 6132b, § 38(2)(c)(I). 
         Thus, the Partnership Act provides that Kimball is entitled to payment in cash
for her partnership interest even if she breached the Partnership Agreement in
dissolving the partnership. See id. Lucke's only justification for paying Kimball less
than the value of her partnership interest arises from any claim he may have to an
offset for damages for the breach. See id. Lucke did not counterclaim for any offset. 
Further, the parties do not dispute that the business of the partnership did not continue
after Kimball's withdrawal. Accordingly, we hold that Kimball is entitled to payment
in cash of the net amount owing to her from any surplus after discharge of the
partnership's liabilities. See id. 
         We overrule Lucke's first issue. We next address Kimball's sufficiency
challenges to the evidence supporting the jury's damages finding. 
III. SUFFICIENCY OF DAMAGES EVIDENCE 
         Kimball's expert witness testified that the partnership's assets included cash,
accounts receivable, and work-in-progress. He calculated the partnership's net assets
as of the date of dissolution. The expert valued Kimball's interest at $126,885.09. 
In his second issue, Lucke complains that Kimball was required to provide a single
damage calculation, net of lost profits. He concludes that the expert's testimony did
not support the $85,000 in damages found by the jury. 
         Kimball responds that Lucke did not introduce his own expert valuation. 
Instead, Kimball notes, Lucke vigorously cross-examined Kimball's expert regarding the
expert's net profit calculations. Therefore, Kimball argues, Lucke cannot now
challenge the jury's exercise of discretion in apparently giving effect in its damages
finding to Lucke's challenges to the expert's conclusions. 
A. Sufficiency Standards of Review
1. Legal Sufficiency
         We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law" issues. See Ed Rachal Found. v. D'Unger, 117 S.W.3d 348, 372 (Tex.
App.–Corpus Christi 2003, pet. filed) (en banc) (Castillo, J., concurring and dissenting)
(and cited cases). We analyze the issue as a "no-evidence" challenge when the party
complaining on appeal did not bear the burden of proof at trial. Id. In challenging the
legal sufficiency of the evidence to support a finding on which an adverse party bore
the burden of proof, the appellant must show that the record presents no evidence to
support the adverse finding. Id. In performing a legal-sufficiency review, we consider
only the probative evidence and inferences that support the challenged finding,
disregarding all evidence and inferences to the contrary. Id. We overrule a legal-sufficiency issue if the record reflects any evidence of probative force to support the
finding. Id. We sustain a legal-sufficiency challenge when: (1) the record conclusively
establishes the complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. 
Id. at 372-73. If there is more than a scintilla of evidence to support the finding, the
legal-sufficiency challenge fails. Id. at 373. More than a scintilla exists when the
evidence "rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions." Id. (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994) (op. on reh'g)). 
 2. Factual Sufficiency
         Unlike legal-sufficiency challenges, factual-sufficiency issues concede that the
record presents conflicting evidence on an issue. D'Unger, 117 S.W.3d at 373. Like
legal-sufficiency challenges, the standard of review on factual-sufficiency issues
depends on the burden of proof at trial. Id. The party attacking a finding on which an
adverse party bore the burden of proof must show that the record presents
"insufficient evidence" to support the finding. Id. In reviewing an insufficient-evidence issue, we examine and consider all of the evidence, not just the evidence that
supports the verdict, to see whether it supports or undermines the finding. Id. We set
aside the finding for factual insufficiency if the evidence in support of the vital fact,
even if it is the only evidence on an issue, is factually too weak to support it. Id. 
B. Sufficiency Analysis
1. Legal Sufficiency
         We consider only the evidence and inferences that support the fact finder's
damages finding. See id. at 372. We disregard all evidence and inferences to the
contrary. See id. Under a proper measure-of-damages instruction, a fact finder has
the discretion to find damages within the range of evidence presented at trial. See
Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002). On appeal, Lucke
does not assert charge error in the damages question, which did not include a
measure-of-damages instruction. The damages question asked only for the jury's
finding regarding "Kimball's share of the value of the net assets of the partnership" as
of the date of dissolution. The jury's answer of $85,000.00 is within the range of
evidence presented by Kimball's expert witness. See id. We find more than a scintilla
of evidence in the record to support the jury's damages finding. See D'Unger,
117 S.W.3d at 373. We hold the evidence legally sufficient to support the jury's
damages finding of $85,000.00. See id. 
2. Factual Sufficiency
         We have reviewed the entire record. See id. at 373. We are satisfied there is
sufficient evidence from Kimball's expert witness to show the value of both the
partnership and Kimball's net interest. See State v. Dehnisch, 437 S.W.2d 46, 49
(Tex. Civ. App.–Corpus Christi 1968, no writ). The fact finder's damages finding is
within the limits of the expert's testimony. See Gulf States Utils. Co., 79 S.W.3d
at 566; see also Dehnisch, 437 S.W.2d at 49. We will not substitute our valuation
for that of the fact finder, which had before it competent evidence as to damages. 
See Dehnisch, 437 S.W.2d at 49. The jury's finding of $85,000.00 as the value of
Kimball's partnership interest was within its province as fact finder. See id. We hold
the evidence factually sufficient to support the jury's damages finding of $85,000.00. 
See D'Unger, 117 S.W.3d at 373. 
         We overrule Lucke's second issue. We turn to Kimball's issue challenging the
rate of prejudgment interest applied by the trial court. 
IV. PREJUDGMENT INTEREST
         The judgment awarded prejudgment interest at the rate of ten percent, for a
total of $33,347.85. Lucke does not complain on appeal about the trial court's
calculation of the amount of the prejudgment interest or the date of accrual. Rather,
in his third issue, Lucke asserts that the Partnership Agreement is a contract that is
silent on the interest question. Therefore, he argues, section 302.002 of the finance
code in effect on the date of judgment controls. See Tex. Fin. Code Ann. § 302.002
(Vernon Supp. 2001). He concludes that a six-percent prejudgment interest rate
applies. Kimball responds that Lucke is a judgment debtor, not an obligor as defined
by the finance code. See Tex. Fin. Code Ann. § 301.002(a)(13) (Vernon Supp. 2001). 
She argues that the prejudgment interest rate is controlled under the common law by
the supreme court's holding in Johnson & Higgins of Tex. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 532 (Tex. 1998) (op. on reh'g). She concludes that a ten-percent prejudgment interest rate is correct. We agree with Kimball. See id. We
overrule Lucke's third issue. 
V. DECLARATORY JUDGMENT
         In his fourth issue, Lucke asserts that Kimball is not entitled to a declaratory
judgment because she sought declaratory relief on issues either not in controversy or
that mirrored the monetary judgment she received. Kimball responds that the
declaratory judgment she sought directly affected her legal relations with Lucke. We
note that the stated purpose of the Declaratory Judgment Act is "to settle and afford
relief from uncertainty and insecurity with respect to rights, status, and other legal
relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 1997); Garcia v.
Comm'rs Court, 101 S.W.3d 778, 784 (Tex. App.–Corpus Christ 2003, no pet.). We
find that Kimball's rights on dissolution of the partnership were in controversy. See
Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 1997). The first jury question
asked the jury to find the value of Kimball's partnership interest. The jury then found
that Lucke breached his fiduciary duty to Kimball.


 The charge did not ask the jury to
find damages for Lucke's breach. The jury refused to find that Lucke acted with fraud
or malice and did not reach the conditional exemplary damages question. Thus, the
only damages question answered by the jury was not conditioned on any finding of
breach of fiduciary duty. We conclude that the only claim supporting the $85,000
finding is Kimball's request for a declaratory judgment. We overrule Lucke's fourth
issue.
VI. CONCLUSION
         Having overruled each of Lucke's issues, we do not reach Kimball's conditional
issues on cross-appeal. See Tex. R. App. P. 47.1. We affirm the judgment of the trial
court.  
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Retired Justice Dorsey not participating. 

Memorandum Opinion delivered and filed
this 22nd day of January, 2004.